**RICHARD M. MARTINEZ, SBA No. 7763**
307 South Convent Avenue
Tucson, Arizona 85701
(520) 327-4797 phone
(520) 320-9090 fax
richard@richardmartinezlaw.com
**Counsel for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF ARIZONA

| | |
|---|---|
| MARTIN H. ESCOBAR ) | |
| Plaintiff, ) | No. |
| v. ) | |
| ) | COMPLAINT |
| JAN BREWER, Governor of ) | |
| the State of Arizona, in her ) | |
| Official and Individual ) | |
| Capacity, TERRY GODDARD, ) | |
| the Attorney General of the ) | |
| the State of Arizona, in his ) | |
| Official and Individual Capacity,) | |
| the City of Tucson, a ) | |
| municipal corporation, and ) | |
| Barbara LaWall, County ) | |
| Attorney, Pima County ) | |
| Defendants. ) | |

Plaintiff alleges:

### I. JURISDICTION

1. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331and 1343(a)(4).

### II. VENUE

2. Venue is proper in this Court because Defendants' unlawful conduct has been initiated and will occur within in the State of Arizona, including Pima County.

### III. PARTIES

3. Plaintiff is a naturalized citizen of the United States and a resident of the State of Arizona living in Pima County within the geographic boundaries of the City of Tucson.

4. Defendant Jan Brewer is the Governor of the State of Arizona, and as such

the highest ranking state constitutional officer whose powers as the chief executive include the approval of legislation passed by the Arizona State Legislature,,

5. Defendant Terry Goddard is the Attorney General for the State of Arizona, and as such is the highest ranking law enforcement official for the State, has the authority to prosecute alleged violations of the enacted criminal statutes of the State of Arizona.

6. The City of Tucson is a municipal corporation, which exists pursuant statutory authority provided by the Legislature of the State of Arizona.

7. Barbara LaWall is the County Attorney in Pima County.

## IV. GENERAL ALLEGATIONS

8. Plaintiff is Hispanic.

9. Plaintiff is employed as a permanent Police Officer with the City of Tucson for the Tucson Police Department.

10. The Tucson Police Department was established and is operated by the City of Tucson.

11. Plaintiff's employment as a Police Officer requires as a condition of employment that he is certified as a Law Enforcement Official by the Arizona Peace Officer Standard and Training Board (AzPOST"), and maintain in good standing AZPOST Law Enforcement Certification.

12. The Tucson Police Department operates as a law enforcement agency for a community with a significant Hispanic population, approximately 36%, that reside within and travel throughout the incorporated area of the City which is also the jurisdictional area of all official responsibilities of plaintiff as a law enforcement official.

13. The City of Tucson is located within the geographic boundaries of Pima County; the County's Hispanic population in the 2000 Census was reported to be 247,578 and comprise 29.34% of the general population.

14. Plaintiff is currently assigned to uniform patrol in Operations Division South an area of the City of Tucson in which Hispanic represent well over 50% of the

residents, Spanish is commonly spoken and frequented by visitors from Mexico.

15. The City of Tucson is geographically located approximately 60 miles south of the international border between the United States of America and Mexico.

16. The State of Arizona shares a geographic border with the State of Sonora, Mexico that spans the entire length of the State of State of Arizona's southern border.

17. In the December 2008 publication prepared by the University of Arizona Eller College of Management for the Arizona Office of Tourism, <u>Mexican Visitors to Arizona: Visitor Characteristics and Economic Impacts, 2007-08</u>, it was reported that over 24 million lawful Mexican alien crossings occurred from Mexico to Arizona from July 2007 to June 2008 and that the City of Tucson is a major destination point for Mexican visitors.

18. The City of Tucson is connected to the border cities of Nogales, Sonora Mexico and Nogales Arizona by Interstate 19, an established part the United States Interstate Freeway system; Interstate 19 is a major corridor of travel between citizens of Mexico and United States who utilize this roadway on a 24/7 basis and number in the hundreds of thousands. Additionally, the I-19 corridor is utilized as a significant commercial corridor for international trade and goods in the hundreds of millions of dollars on an annual basis.

19. In plaintiff's experience as a Law Enforcement Officer, proximity to the Mexican border does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

20. In plaintiff's experience as a Law Enforcement Officer, neither the racial and linguistic characteristics of Operations Division South or the Mexican national visitors thereto provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

21. During the performance of plaintiff's duties as a Law Enforcement Officer he has daily contact with numerous Hispanics, a number of whom have a skin color and/or physical features that are commonly attributed to Hispanics; In plaintiff's

experience as a Law Enforcement Officer, skin color and/or physical features does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

22. During the performance of plaintiff's duties as a Law Enforcement Officer he has daily contact with numerous Hispanics, a number of whom dress in a manner that is commonly and/or stereotypical in attribution to Hispanics; In plaintiff's experience as a Law Enforcement Officer, the clothing worn by any person does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

23. During the performance of plaintiff's duties as a Law Enforcement Officer, he has daily contact with numerous Hispanics, a number of whom are Spanish-speaking, some monolingual Spanish-speakers, some Spanish dominant and some who speak English with an accent; In plaintiff's experience as a Law Enforcement Officer, a person's linguistic capabilities in Spanish and/or English do not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

24. During the performance of plaintiff's duties as a Law Enforcement Officer, he has daily contact with numerous Hispanics, a number of whom listen to Spanish-language radio, television and music; In his experience as a Law Enforcement Officer, listening to Spanish-language radio, watching Spanish-language television or playing Spanish-language music does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

25. During the performance of plaintiff's duties as a Law Enforcement Officer, he has daily contact with numerous Hispanics, a number of whom are in vehicles that are common and/or stereotypical in attribution to Hispanics; In plaintiff's experience as a Law Enforcement Officer, the vehicle a person is in person does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

26. During the performance of plaintiff's duties as a Law Enforcement Officer, he has daily contact with numerous Hispanics, a number of whom use public

transportation, commuter vans or commercial carriers; In plaintiff's experience as a Law Enforcement Officer, the use of public transportation, commuter vans or commercial carriers does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

27. During the performance of plaintiff's duties as a Law Enforcement Officer, he has daily contact with numerous Hispanics, a number of whom are in vehicles with out of state and Mexican automobile license plates; In plaintiff's experience as a Law Enforcement Officer, the license plate on a vehicle does not provide any race neutral criteria or basis to suspect or identify who is lawfully in the United States.

28. During the performance of plaintiff's duties as a Law Enforcement Officer, he has daily contact with numerous Hispanics, a number of whom live or are inside a residence that is common and/or stereotypical in attribution to Hispanics to Hispanics;

29. During the performance of plaintiff's duties as a Law Enforcement Officer he has daily contact with numerous Hispanics, some of whom are elementary, middle and high school age and at times occur on school grounds or in close proximity thereto.

30. In plaintiff's experience as a Law Enforcement Officer, contact with K-12 school age Hispanic children that includes any inquiry into the student's or parents status in the United States is not premised on race neutral criteria or basis to suspect or identify who is lawfully in the United States and does not occur without invading the student's privacy, right to due process or equal protection.

31. In plaintiff's experience as a Law Enforcement Officer, there are no race neutral criteria or basis to suspect or identify who is lawfully in the United States; requiring such, the mandate of SB 1070, compels under threat of lawsuit, discipline and loss of required certification every Law Enforcement Officer in the State of Arizona to actively engage in racial profiling to detain, question and require every Hispanic found within the limits of the City of Tucson to prove their legal status in the United

States of America irrespective of county of origin, citizenship, immigrant status based solely on immutable and mutable characteristics common or stereotypical in attribution to Hispanics.

32. During the performance of plaintiff's duties as a Law Enforcement Officer he has daily contact with Hispanics during the investigation into potential criminal activity, an investigation that is often dependent on the cooperation, information and trust of Hispanic witnesses and victims; In plaintiff's experience as a Law Enforcement Officer, requiring law enforcement to routinely question Hispanics about their immigrant status in the United States and require production of actual proof of their lawful presence in the United States would seriously impede law enforcement investigations and facilitate the successful commission of crimes in the United States.

33. Defendant Brewer signed Senate Bill 1070 into law on Friday, April 23rd, 2010 and on the same date issued Executive Order 2010-09 requiring AzPOST to prescribe a minimum training course for law enforcement officers in the state and all political subdivisions to implement SB 1070 while allowing for use of race, color and national origin as permissible factors to consider in establishing reasonable suspicion that a person is an undocumented alien.

34. SB 1070 compels plaintiff as a AzPOST certified Law Enforcement Officer for the City of Tucson to determine the immigration status of Hispanics, detain, arrest and criminally cite undocumented persons and lawful residents of the United States who fail to complete or carry an alien registration document.

35. SB 1070 amends A.R.S. § 13-1509, and provides for the criminal prosecution as a class 1 misdemeanor and as a felony persons who fail to complete or carry an alien registration document.

36. The City of Tucson has established and maintains as a part of the City Attorney's Office, a criminal prosecution entity that routinely prosecutes criminal matters within the jurisdiction of the Tucson Municipal City Court.

37. Barbara LaWall, as the County Attorney for Pima County has the

1  responsibility and duty to prosecute alleged violations of the criminal laws enacted in
2  Arizona by charging such alleged offenses in the Pima County Justice Court or the
3  Superior Court of the State of Arizona in Pima County.

4  38.  At all times relevant to this complaint, Defendants have announced and made clear their intent to implement and enforce SB 1070, enacted legislation of the State of Arizona, a session law that places every Hispanic within the State of Arizona at substantial risk of the immediate loss of rights guaranteed by the United States Constitution, including unlawful detention, denial of due process, equal protection based solely on their race, Hispanic.

39. SB 1070 was enacted by the Legislature of the State of Arizona and signed into law by Defendant Brewer as a result of racial bias and anti-Hispanic beliefs and sentiments.

40.  Plaintiff believes that SB 1070 is the product of racial bias aimed specifically at Hispanics, is unlawful, results in impermissible deprivations of rights guaranteed by the United States Constitution, has voiced his opinions of such in the work place and been confronted by Law Enforcement Officer's for expressing such beliefs.

41. The City of Tucson, including the Tucson Police Department has no agreement or authorization as provided for and required by 8 U.S.C. § 1357, Subsection 287(g)(1) and (5) to allow, instruct or order any City of Tucson employee, including and of its 1,100 plus authorized Law Enforcement Officers to make any inquiry of any individual concerning the person's immigration status or require proof of lawful presence in the United States.

## COUNT ONE
## FOURTEENTH AMENDMENT: DUE PROCESS
## (42 U.S.C. § 1983)

42. Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Defendants' actions constitute violations of due process and 42 U.S.C. § 1983.

44. As a direct and proximate result of the conduct of Defendants', Plaintiff has suffered injury.

## COUNT TWO
## FOURTEENTH AMENDMENT: EQUAL PROTECTION
## (42 U.S.C. § 1983)

45. Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. Defendants' actions against Plaintiff constitute a violation of equal protection and 42 U.S.C. § 1983.

47. As a direct and proximate result of the conduct of Defendants', Plaintiff has suffered injury.

## COUNT THREE
## FIRST AMENDMENT: FREE SPEECH

48. Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49. Defendants' actions against Plaintiff constitute a violation of free speech and 42 U.S.C. § 1983.

50. As a direct and proximate result of the conduct of Defendants', Plaintiff has suffered injury.

## COUNT FOUR
## FIFTH AMENDMENT

51.  Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. Defendants' actions against Plaintiff constitute a violation of Fifth Amendment to the United States Constitution.

53. As a direct and proximate result of the conduct of Defendants', Plaintiff

has suffered injury.

## COUNT FIVE
## FOURTH AMENDMENT

54. Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. Defendants' actions against Plaintiff constitute a violation of the Fourth Amendment to the United States Constitution.

56. As a direct and proximate result of the conduct of Defendants', Plaintiff has suffered injury.

## COUNT SIX
## FEDERAL PREEMPTION & UNAUTHORIZED OR SUPERVISED FEDERAL IMMIGRATION CONDUCT
## (8 U.S.C. § 1357)

57. Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58. Defendants' actions against Plaintiff constitute a violation of 8 U.S.C. § 1357, Subsection 287(g)(1) and (5) as the City of Tucson has no authorization or agreement with the United States to perform any immigration inquiries of any persons present in the United States.

59. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered injury.

## DECLARATORY JUDGMENT
## (28 U.S.C. § 2201)

60. Plaintiff hereby re-alleges and incorporates all allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61. Plain seeks a declaratory judgment as provided in 28 U.S.C. § 2201 et.seq.

//

# V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1. That this court declare the actions complained of herein to be in violation of 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2. That Defendants' be ordered to take appropriate injunctive and affirmative acts to insure that the actions complained of herein are not engaged in again by them or any of its agents.

3. That Defendants', including the officers, director, agents, employees and successors be permanently enjoined from engaging any immigration stops, questioning, detention, citing or any law enforcement activity reserved to the federal government.

4. That Plaintiff be awarded his attorneys' fees;

5. That Plaintiff be awarded his costs; and

6. That Plaintiff be awarded all other relief that this court deems just and proper under the circumstances.

DATED this 28th day of April 2009.

    s/*Richard M. Martinez*, Esq.
Richard M. Martinez, Esq.
Counsel for Plaintiff