IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin H. Escobar,<br><br>    Plaintiff,<br><br>vs.<br><br>Jan Brewer, Governor of the State of Arizona, in her Official and Individual Capacity; City of Tucson, a municipal corporation,<br><br>    Defendants. | No. CV 10-249-PHX-SRB<br><br>**ORDER** |

This matter comes before the Court on Defendant Janice K. Brewer's Motion to Dismiss the First Amended Complaint ("Def.'s Mot.") (Doc. 55).

**I.     BACKGROUND**

The Arizona Legislature enacted a set of statutes and statutory amendments in the form of Senate Bill 1070, the "Support Our Law Enforcement and Safe Neighborhoods Act," 2010 Arizona Session Laws, Chapter 113, which Governor Brewer signed into law on April 23, 2010. Seven days later, the Governor signed into law a set of amendments to Senate Bill 1070 under House Bill 2162, 2010 Arizona Session Laws, Chapter 211.[1] S.B. 1070 had an effective date of July 29, 2010. Among other things, S.B. 1070 Subsection 2(B) requires

---

[1] In this Order, unless otherwise specified, the Court refers to S.B. 1070 and H.B. 2162 collectively as "S.B. 1070," describing the April 23, 2010, enactment as modified by the April 30, 2010, amendments.

officers to make a reasonable attempt, when practicable, to determine an individual's immigration status during any lawful stop, detention, or arrest where reasonable suspicion exists that the person is unlawfully present in the United States. S.B. 1070 § 2(B) (adding Ariz. Rev. Stat. ("A.R.S.") § 11-1051(B)). In addition, Subsection 2(A) prohibits Arizona officials, agencies and political subdivisions from limiting or restricting the enforcement of federal immigration laws, and Subsection 2(H) permits legal residents of Arizona to bring civil actions challenging "any official or agency of [Arizona] that adopts or implements a policy that limits or restricts the enforcement of federal immigration laws . . . to less than the full extent permitted by federal law." *Id.* § 11-1051(A), (H). Section 6 of S.B. 1070 amends A.R.S. § 13-3883 to permit an officer to arrest a person without a warrant if the officer has probable cause to believe that "the person to be arrested has committed any public offense that makes the person removable from the United States." *Id.* § 13-3883(A)(5).

Plaintiff Martin Escobar is a police officer with the City of Tucson Police Department holding the rank of Lead Patrol Officer. (Doc. 4, 1st Am. Compl. ("FAC") ¶ 10.) Plaintiff challenges provisions found in Sections 2 and 6 of S.B. 1070. Plaintiff alleges that as a police officer he is obligated to enforce S.B. 1070 and that he "believes the Act . . . is unlawful [and] results in impermissible deprivations of rights guaranteed by the United States Constitution." (*Id.* ¶¶ 21, 57.) Plaintiff asserts that enforcement of S.B. 1070 will violate the rights of Latinos and Latinas as well as minors and school children and that he may be subject to civil liability for violating the rights of others in enforcing S.B. 1070. (*Id.* ¶¶ 69-70, 77.) Plaintiff also alleges that, if he refuses to enforce S.B. 1070, he will be subject to discipline by his employer and civil actions brought pursuant to Subsection 2(H) of S.B. 1070. (*Id.* ¶¶ 71-72.) According to Plaintiff's FAC, Plaintiff will also be "forced to expend his scarce time and resources in order to thoroughly familiarize himself with [S.B. 1070]'s requirements." (*Id.* ¶ 73.) Finally, Plaintiff alleges that he is being pressured to enforce S.B. 1070 by "individuals within the Tucson Police Department" and that this pressure is chilling his First Amendment right to speak out against S.B. 1070. (*Id.* ¶¶ 74-75.)

Plaintiff filed the instant lawsuit on April 29, 2010, after S.B. 1070 was signed but

1  before it was modified by H.B. 2162. (*See* Doc. 1, Compl.) Plaintiff filed his FAC on May
2  18, 2010. (*See* FAC.) Defendant Brewer challenges Plaintiff's standing to pursue his
3  challenges to S.B. 1070 and argues that plaintiff has failed to state a claim upon which relief
4  can be granted. (Def.'s Mot. at 1.)

## II. LEGAL STANDARDS AND ANALYSIS

### A. Dismissal for Lack of Standing Pursuant to Rule 12(b)(1)

Defendant Brewer moves to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff does not have standing to bring this action. (*Id.* at 4-9.) "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute . . . ." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). The plaintiff has the burden of establishing standing and must "'allege[] such a personal stake in the outcome of the controversy' as to warrant [the] invocation of federal-court jurisdiction and . . . justify exercise of the court's remedial powers." *Id.* at 499 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). In evaluating standing, courts must accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998) (quoting *Warth*, 422 U.S. at 501).

Under Article III of the Constitution, a plaintiff does not have standing unless he can show (1) an "injury in fact" that is concrete and particularized and actual or imminent (not conjectural or hypothetical); (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009). Even when the constitutional minima of standing are present, prudential concerns may impose additional limitations. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004). Prudential standing limitations embody "'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id.* at 12 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Prudential standing limitations include "'the general prohibition on a litigant's raising another person's

- 3 -

legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Id.* (quoting *Allen*, 468 U.S. at 750); *see also Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 848-49 (9th Cir. 2007) (quoting *Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983)).

### B. Plaintiff's Standing to Challenge S.B. 1070

Plaintiff's FAC alleges several injuries arising from Plaintiff's obligation to enforce S.B. 1070. (FAC ¶¶ 69-77.) In addition, Plaintiff argues in his Response to Defendant's Motion to Dismiss that he has standing "[a]s a Hispanic residing in Arizona . . . exposed to all the dangers that [S.B. 1070] presents" and as a result of his pending Motions to Consolidate. (Pl.'s Resp. at 12, 16.) Defendant Brewer challenges each alleged injury as an insufficient basis for standing under both the constitutional and prudential standing limitations. (Def.'s Mot. at 5-9.)

#### 1. Standing Based on Plaintiff's Alleged Injuries as a Law Enforcement Officer

Plaintiff alleges that, as a law enforcement officer obligated to enforce S.B 1070, he is faced with "a dilemma." (FAC ¶ 77.) Plaintiff alleges that "if he refuses to enforce [S.B. 1070], he can be disciplined by his employer or subjected to costly private enforcement actions under [S.B. 1070]" and that, "if he enforces [S.B. 1070], he can be subjected to costly civil actions alleging the deprivation of the civil rights of the individual against whom he enforces [S.B. 1070]." (*Id.*)

As an initial matter, the Ninth Circuit Court of Appeals addressed a similar dilemma in *City of South Lake Tahoe v. California Tahoe Regional Planning Agency* and ultimately determined that the dilemma did not give rise to standing. 625 F.2d 231, 237-238 (9th Cir. 1980). In *City of South Lake Tahoe*, city councilmembers challenged planning and development regulations. *Id.* at 233. The councilmembers asserted that, while they were required by law to enforce the challenged regulations and a refusal to enforce the regulations could result in criminal penalties, enforcement of the regulations would violate the

1  councilmembers' oaths of office to uphold the United States Constitution and would expose
2  the councilmembers to civil liability. *Id.* The court recognized the councilmembers'
3  "personal dilemma" but noted that "the source of the . . . complaint . . . [was] just abstract
4  outrage at the enactment of an unconstitutional law" and that "the councilmembers will lose
5  nothing by enforcing the [challenged legislation] save an abstract measure of constitutional
6  principle." *Id.* at 237. The court concluded that, because the councilmembers could act to
7  enforce the regulations without any real threat of concrete harm, "the councilmembers ha[d]
8  available a course of action which subjects them to no concrete adverse consequences." *Id.*
9  Ultimately, the court held that the abstract injuries were insufficient to support standing. *Id.*

10  Plaintiff's alleged dilemma similarly fails to provide a sufficient basis for standing.
11  Plaintiff asserts that enforcement of S.B. 1070 will subject him to costly civil actions. (FAC
12  ¶ 77.) However, standing requires the plaintiff to allege that he "has sustained or is
13  immediately in danger of sustaining some direct injury." *City of S. Lake Tahoe*, 625 F.2d at
14  238. The *City of South Lake Tahoe* court found that the plaintiffs' allegations that they would
15  be exposed to civil liability if they acted to enforce the allegedly unconstitutional regulations
16  were "wholly speculative." *Id.* In addition, the court noted that "multiple contingencies"
17  preclude standing where "there is no immediate threat of suit nor reason to believe suit is
18  inevitable." *Id.* at 239. Here, not only is the threat of potential suit wholly speculative, but
19  it is also not clear that Plaintiff would be civilly liable for actions taken in enforcing S.B.
20  1070. Generally, law enforcement officers are not liable for actions committed "'insofar as
21  their conduct does not violate clearly established statutory or constitutional rights of which
22  a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)
23  (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Grossman v. City of*
24  *Portland*, 33 F.3d 1200, 1209-10 (9th Cir. 1994) (finding that "an officer who reasonably
25  relies on the legislature's determination that a statute is constitutional should be shielded
26  from personal liability"). In addition, S.B. 1070 § 2(K) provides:

> Except in relation to matters in which the officer is adjudged to have acted in bad faith, a law enforcement officer is indemnified by the law enforcement officer's agency against reasonable costs and expenses, including attorney

- 5 -

> fees, incurred by the officer in connection with any action, suit or proceeding brought pursuant to this section in which the officer may be a defendant by reason of the officer being or having been a member of the law enforcement agency.

S.B. 1070 § 2(K) (adding A.R.S. § 11-1051(K)). In light of these limits on officer liability, "the threat of civil liability is too attenuated and conjectural" to provide Plaintiff with a basis for standing. *See City of S. Lake Tahoe*, 625 F.2d at 239.

Plaintiff also asserts that if he refuses to enforce S.B. 1070 he will be subject to discipline by his employer and "costly lawsuits by private parties" pursuant to the enforcement provision found in Subsection 2(H) of S.B. 1070. (FAC ¶¶ 71-72.) Subsection 2(H) provides:

> A person who is a legal resident of this state may bring an action in superior court to challenge any official or agency of this state or a . . . political subdivision of this state that adopts or implements a policy that limits or restricts the enforcement of federal immigration laws . . . [and that] [i]f there is a judicial finding that an *entity* has violated this section, the court shall order that the *entity* pay a civil penalty.

S.B.1070 § 2(H) (adding A.R.S. § 11-1051(H)) (emphasis added). On its face, Subsection 2(H) does not appear to impose liability on individual law enforcement officers. As a result, Plaintiff's allegation that he will be subject to private actions brought pursuant to Subsection 2(H) of S.B. 1070 fails to give rise to a "concrete and particularized" injury sufficient to support Plaintiff's standing. *See Lujan*, 504 U.S. at 560. In addition, the allegation that Plaintiff will be subject to discipline by his employer if he refuses to enforce S.B. 1070 also fails because the threat of discipline is too abstract and speculative. "A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2769 (2008) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). While Plaintiff alleges that Defendants Brewer and the City of Tucson have expressed an intent to enforce the law, this does not provide any information about the likelihood that Plaintiff will be subject to discipline for a refusal to enforce the law. (*See* FAC ¶ 55.) Plaintiff has not alleged any facts making the alleged injury resulting from discipline for a failure to enforce S.B. 1070 imminent, rather than conjectural or hypothetical.

- 6 -

Moreover, the fact "[t]hat an alternative course exists [(i.e. refusing to enforce the statute)] which might result in criminal liability does not transform the [plaintiffs'] abstract disagreement with the legislature . . . into [a] judicially cognizable concrete injury." *City of S. Lake Tahoe*, 625 F.2d at 237-38. Here, the fact that Plaintiff might be subject to discipline for refusing to perform his obligations as a law enforcement officer does not transform his "abstract disagreement" with S.B. 1070 into a "judicially cognizable concrete injury." *See id.*

Plaintiff also alleges that "he does not believe that he can enforce [S.B. 1070] because he believes that in so doing" he would violate the rights of Latinos and Latinas as well as minors and school children. (FAC ¶¶ 69-70.) A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499; *see also City of S. Lake Tahoe*, 625 F.2d at 239 n.8 (noting that city councilmembers could not raise constitutional rights of third parties where the councilmembers' injuries were abstract rather than not concrete and particularized). Here, the injury alleged is actually an injury to the constitutional rights of others. (*See* FAC ¶¶ 69-70.) Plaintiff cannot meet the standing requirements by asserting an injury based on violations of the rights of others. *See Warth*, 422 U.S. at 499.[2]

In addition, Plaintiff alleges that he "will be forced to expend his scarce time and resources in order to fully familiarize himself with [S.B. 1070]." (FAC ¶ 73.) It is not clear how Plaintiff will be harmed by learning about S.B. 1070 or how learning about S.B. 1070 would be any different from Plaintiff's regular work duties. The allegation that Plaintiff, a law enforcement officer, will have to spend time to learn about and understand the enforcement of a new law is simply insufficient to state an injury for purposes of standing.

Finally, Plaintiff alleges that he is being pressured to enforce S.B. 1070 by "individuals within the Tucson Police Department and . . . various political entities" and that

---

[2] To the extent Plaintiff alleges an injury to his own rights based on the obligation to violate the rights of others, Plaintiff's injury is the type of "abstract constitutional grievance[]" rejected as a basis for standing in *City of South Lake Tahoe*. 625 F.2d at 238.

- 7 -

this pressure is chilling his First Amendment right to speak out against S.B. 1070. (*Id.* ¶¶ 74-75.) In order to give rise to standing, an "injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560. The alleged chilling of Plaintiff's First Amendment rights results not from S.B. 1070 itself but from the alleged pressure to enforce S.B. 1070 exerted on Plaintiff by unidentified third parties. (*See* FAC ¶¶ 74-75.) As a result, the alleged injury to Plaintiff's First Amendment rights is insufficient to act as a basis for Plaintiff's standing.

Plaintiff's FAC fails to allege sufficient facts demonstrating that Plaintiff has standing to bring this action.

### 2. Standing Based on Plaintiff's Alleged Injuries as a "Hispanic Residing in Arizona"

A plaintiff must allege facts in the complaint demonstrating the plaintiff's standing. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003)); *see also City of S. Lake Tahoe*, 625 F.2d at 237 n.7 ("[T]he facts [that] demonstrate a plaintiff's standing must be alleged in the plaintiff's complaint." (citing *Jenkins v. McKeithen*, 395 U.S. 411, 422 (1969)). Plaintiff's FAC does not include any allegations indicating that Plaintiff's claims are based on his status as a "Hispanic residing in Arizona." Plaintiff cannot establish standing by asserting a new theory of injury in his Response to the Motion to Dismiss. *See Sacks*, 466 F.3d at 771; *City of S. Lake Tahoe*, 625 F.2d at 237 n.7.

### 3. Standing Based on Plaintiff's Motions to Consolidate

Plaintiff argues that "so long as one plaintiff has standing, the [standing] requirement is satisfied." (Pl.'s Resp. at 16 (citing *Constr. Indus. Ass'n of Sonoma Cnty. v. City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975).) Plaintiff asserts that, since he has filed Motions to Consolidate, "this Court should consider the issue of standing as consolidated cases." (*Id.* at 16-17.) Standing is a threshold question, and the instant litigation has not been consolidated with any other pending suit. *See Farrakhan v. Gregoire*, 590 F.3d 989, 1001

(9th Cir. 2010) (noting that standing is a threshold question designed to ensure "that the plaintiff is the correct party to bring suit").[3] Plaintiff cites no law for the proposition that the Court should evaluate his standing in light of pending motions to consolidate. Plaintiff's pending Motions to Consolidate do not alter the Court's analysis of Plaintiff's standing.

### III. CONCLUSION

Plaintiff has not alleged "non-conclusory 'factual content,'" from which the Court can draw reasonable inferences that are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009)). Therefore, and for the reasons stated above, the Court finds that Plaintiff does not have standing to bring this lawsuit at this time.

**IT IS ORDERED** granting Defendant Janice K. Brewer's Motion to Dismiss (Doc. 55). Plaintiff's First Amended Complaint is dismissed for lack of standing.

**IT IS FURTHER ORDERED** denying Plaintiff's First Motion to Consolidate (Doc. 20), Plaintiff's Second Motion to Consolidate (Doc. 79), and Plaintiff's Motion for Preliminary Injunction (Doc. 71).

**IT IS FURTHER ORDERED** directing Defendant City of Tucson to show cause, within 14 days from the date of this Order, why the entire action, including the City of Tucson's Crossclaim (Doc. 9), should not be dismissed.

DATED this 31st day of August, 2010.

_____
Susan R. Bolton
United States District Judge

---

[3] In addition, consolidation is a discretionary determination based on a weighing of the "judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989). Consolidation of cases where there is no standing does not promote judicial efficiency.

- 9 -